# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# (COLUMBIA DIVISION)

| | |
|---|---|
| Washington Government Environmental Services Company, LLC, Engineered Products Division, | Case No. 3:14-cv-02125-JFA |
| Plaintiff, | |
| v. | |
| Shaw AREVA MOX Services, LLC, | |
| Defendant. | |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT

Defendant, Shaw AREVA MOX Services, LLC ("MOX Services") though its undersigned counsel, files its Answer, Affirmative Defenses and Counterclaim to Plaintiff, Washington Governmental Environmental Services Company, LLC, Engineered Products Division ("WGES") Complaint filed in the above-captioned matter, hereby states as follows:

## ANSWER

### Nature of the Action

1. MOX Services denies any asserted responsibility for the alleged cost overruns asserted by Plaintiff. MOX Services admits only that it is the prime contractor for the United States Department of Energy's ("DOE") mixed oxide fuel fabrication facility at the Savannah River Site in South Carolina (the "Project"). The remainder of this Paragraph is denied.

2. MOX Services admits only that it entered into an agreement with WGES for the fabrication and assembly of several gloveboxes. The remaining allegations of Paragraph 2 rely upon terms and conditions of the agreement, the terms and conditions of which speak for

themselves, and any characterization of those terms by Plaintiff is denied. In further response, the remaining allegations of Paragraph 2 state legal conclusions, to which no response is required. The remainder of this Paragraph is denied.

3. The allegations of Paragraph 3 state conclusions of law to which no response is required. To the extent that further response may be required, the allegations of Paragraph 3 rely upon the terms and conditions of written documents which speak for themselves. In specific response, to the extent such response is required, MOX Services' documents did not contain numerous errors, omissions and inconsistencies as alleged by the Plaintiff, nor did the alleged errors and changes, to the extent that the same actually exist, result in WGES being unable to perform the work related to its agreement with MOX Services, or cause the alleged increase in the cost of performance. It is admitted only that MOX Services issued changes during the course of performance of the agreement as is customary on any project of this type. The remainder of this Paragraph is denied.

4. MOX Services denies that it has ever recognized WGES's alleged entitlement to recover additional costs due to alleged design errors and changes. It is admitted only that MOX Services de-scoped WGES' Subcontract. The remainder of this Paragraph is denied.

5. It is denied that MOX Services' drawings, specifications or other documents contained the alleged errors, omissions and/or changes as alleged by the Plaintiff. The litigation docketed Oak Ridge Tool-Engineering, Inc. v. Shaw AREVA MOX Services, LLC, No. 3:13-cv-992-JFA (D. S.C., filed on or about April 12, 2013) (the "ORTE Action"), is made up of pleadings and other submissions that speak for themselves. Plaintiff's characterizations of the ORTE Action, MOX Services' relationship and dealings with other subcontractors on the

Project, and the remainder of this Paragraph are all denied. Furthermore, MOX Services incorporates by reference its Motion to Strike this Paragraph (see Doc. # 11).

### The Parties

6. Following reasonable investigation, MOX Services cannot attest to the truth or falsity of this Paragraph. To the extent that any further response is required, this Paragraph is denied.

7. The allegations of Paragraph 7 state conclusions of law to which no response is required. To the extent a response may be required, and in accordance with its Answers to Local Rule 26.01 Interrogatories, MOX Services admits that it is a privately-held limited liability company and states that its corporate members are CB&I Project Services Group, LLC, AREVA NP Inc., and AREVA Federal Services, LLC. Chicago Bridge & Iron Company N.V., a publicly owned company, is the parent of CB&I Project Services Group, LLC. AREVA S.A., a publicly owned company, is the parent of AREVA NP Inc. and AREVA Federal Services, LLC. MOX Services denies all allegations of Paragraph 7 contrary to the above response.

### Jurisdiction and Venue

8. The allegations of Paragraph 8 state conclusions of law to which no response is required. To the extent that a response may be required, the allegations are denied as MOX Services is without knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 8.

9. The allegations of Paragraph 9 rely upon terms and conditions of written document, which speak for themselves, and also state conclusions of law to which no response is required. To the extent a further response is required, it is admitted that the agreement provides

for venue of an action arising therefrom in the United States District Court for the District of South Carolina, Columbia Division.

### Facts

10.     MOX Services admits that it is the prime contractor on the DOE Contract DE-AC02-99CH10888.  The remaining allegations of Paragraph 10 are a characterization of the written terms and conditions of the prime contract, the terms and conditions which speak for themselves and, therefore, no response is required.  To the extent that any further response is required, the remainder of this Paragraph is denied.

11.     MOX Services admits that it used a competitive process to select subcontractors for the manufacture of gloveboxes.  The allegations characterizing the subcontractors are denied.  The allegations concerning the basic ordering agreement refer to the terms and conditions of written documents, which speak for themselves, and no response is required.  MOX Services admits that it conducted competitions among pre-qualified manufacturers to award task order releases for the gloveboxes.  To the extent that any further response is required, the remainder of this Paragraph is denied.

12.     The allegations of Paragraph 12 refer to the terms and conditions of a written agreement to which no response is required.  To the extent a response is required, it is admitted that MOX Services issued a basic ordering agreement to WGES on or about April 20, 2009.  It is further admitted that this basic ordering agreement allowed WGES to submit proposals to task order releases.  To the extent that any further response is required, the remainder of this Paragraph is denied.

13.     The allegations of Paragraph 13 rely upon the terms and conditions of a written document, which speaks for itself, and, therefore no response is required.  To the extent a

response is required, it is admitted that MOX Services issued Task Order No. 001 to WGES on or about September 25, 2009.

14.     The allegations of Paragraph 14 rely upon the terms and conditions of a written document, which speaks for itself, and, therefore no response is required.  To the extent a response is required, it is admitted that MOX Services issued Task Order No. 003 to WGES on or about March 4, 2010.

15.     The allegations of Paragraph 15 rely upon the terms and conditions of a written document, which speaks for itself, and, therefore no response is required.  To the extent a response is required, it is admitted that MOX Services issued Task Order No. 005 to WGES on or about October 22, 2010.

16.     The allegations of Paragraph 16 rely upon the terms and conditions of written documents, to which no response is required.  In further response, to the extent a response may be required, MOX Services denies the characterization of TOR 1, TOR 3 and TOR 5 as the subcontract as there are many other documents which constitute the agreement between MOX Services and WGES which are not specifically referenced in Paragraph 16.  To the extent that any further response is required, the remainder of this Paragraph is denied.

17.     The allegations of Paragraph 17 state conclusions of law to which no response is required.  The allegations further rely upon the terms of the Subcontract as that term has been erroneously defined by WGES in its Complaint, the terms and conditions of which speak for themselves, and no response is required.  To the extent a response may be required, it is specifically denied that the Subcontract describes each of the TORs as a build to print project and it is specifically denied that WGES' characterization of a build to print project is applicable to this matter.  Moreover, it is specifically denied that the In re Northrop Grumman Corp. matter

has any application to this matter. To the extent that any further response is required, the remainder of this Paragraph is denied.

18. The allegations of Paragraph 18 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that a further response is required, it is denied that the referenced paragraph "states that the work is a build-to-print project." To the extent that any further response is required, the remainder of this Paragraph is denied.

19. The allegations of Paragraph 19 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that any further response is required, the remainder of this Paragraph is denied.

20. The allegations of Paragraph 20 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that any further response is required, the remainder of this Paragraph is denied.

21. The allegations of Paragraph 21 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that any further response is required, the remainder of this Paragraph is denied.

22. The allegations of Paragraph 22 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that any further response is required, the remainder of this Paragraph is denied.

23. The allegations of Paragraph 23 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that any further response is required, the remainder of this Paragraph is denied.

24. The allegations of Paragraph 24 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that any further response is required, the remainder of this Paragraph is denied.

25. The allegations of Paragraph 25 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. It is further specifically denied that the MOX Services' drawings and specifications contained the numerous errors, omissions and/or inconsistencies cited by the Plaintiff. To the extent that any further response is required, the remainder of this Paragraph is denied.

26. The allegations of Paragraph 26 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent a further response may be required, MOX Services denies that it refused to issue appropriate changes. Additionally, MOX Services, following reasonable investigation, lacks sufficient knowledge or information to attest to the truth of falsity of this Paragraph regarding WGES' alleged conduct. To the extent that any further response is required, the remainder of this Paragraph is denied.

27. The allegations of Paragraph 27 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. Additionally, MOX Services, following reasonable investigation, lacks sufficient knowledge or information to attest to the truth of falsity of this Paragraph regarding WGES' alleged conduct. To the extent that any further response is required, the remainder of this Paragraph is denied.

28. The allegations of Paragraph 28 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. Additionally, MOX Services, following reasonable investigation, lacks sufficient knowledge or information to

attest to the truth of falsity of this Paragraph regarding WGES' alleged conduct. To the extent that any further response is required, the remainder of this Paragraph is denied.

29. MOX Services, following reasonable investigation, lacks sufficient knowledge or information to attest to the truth of falsity of Paragraph 29 regarding WGES' alleged conduct. To the extent that any further response is required, the remainder of this Paragraph is denied.

30. The allegations of Paragraph 30 state conclusions of law and, therefore, no response is required. Additionally, MOX Services, following reasonable investigation, lacks sufficient knowledge or information to attest to the truth of falsity of this Paragraph regarding WGES' alleged conduct. To the extent that any further response is required, the remainder of this Paragraph is denied.

31. The allegations of Paragraph 31 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. Additionally, MOX Services, following reasonable investigation, lacks sufficient knowledge or information to attest to the truth of falsity of this Paragraph regarding WGES' alleged conduct. It is further specifically denied that MOX Services "disrupted" WGES in the ways alleged in this Paragraph, or otherwise is responsible for any alleged "defective design." It is further specifically denied that MOX Services used Discrepancy Reports in any way other than as provided by the agreement. To the extent that any further response is required, the remainder of this Paragraph is denied.

32. The allegations of Paragraph 32 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that any further response is required, the remainder of this Paragraph is denied.

33. The allegations of Paragraph 33 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent a further response is required, it is denied that MOX Services agreed to alter the contractually required process for compensation of changed work. To the extent that any further response is required, the remainder of this Paragraph is denied.

34. The allegations of Paragraph 34 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent a further response is required, it is denied that MOX Services recognized that the purported design deficiencies increased the WGES' costs. It is admitted that MOX Services issued changes to the work of the agreement in accordance with the contractual procedure. Additionally, MOX Services, following reasonable investigation, lacks sufficient knowledge or information to attest to the truth of falsity of this Paragraph regarding WGES' alleged conduct. To the extent that any further response is required, the remainder of this Paragraph is denied.

35. The allegations of Paragraph 35 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. It is admitted only that, on or about March 7, 2011, WGES submitted a Request for Equitable Adjustment ("REA") to MOX Services and submitted another REA on or about September 20, 2011. To the extent that any further response is required, the remainder of this Paragraph is denied.

36. The allegations of Paragraph 36 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent a further response may be required, it is admitted that WGES; REAs have not been resolved as of the filing of this pleading. To the extent that any further response is required, the remainder of this Paragraph is denied.

37. The allegations of Paragraph 37 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent a response may be required, it is admitted that MOX Services directed WGES to stop work and that MOX Services de-scoped WGES on or about August 20, 2012. To the extent that any further response is required, the remainder of this Paragraph is denied.

38. The allegations of Paragraph 38 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent a further response may be required, it is denied that MOX Services' de-scoping of WGES was a termination for convenience and that WGES is entitled to any compensation related to a termination for convenience. To the extent that any further response is required, the remainder of this Paragraph is denied.

39. The allegations of Paragraph 39 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that a further response is required, it is denied that any applicable requirements required WGES to submit a termination settlement proposal as WGES was not terminated for convenience. Rather, its work was de-scoped. It is further denied that WGES is entitled to recovery under a termination for convenience It is admitted that WGES submitted, inappropriately, what it deemed to be termination settlement proposal in the amount stated and that the document incorporated an REA while it is denied that MOX Services is responsible for the alleged additional costs incurred by WGES. To the extent a further response is required, the remainder of this Paragraph is denied. Furthermore, MOX Services incorporates by reference its Motion to Strike this Paragraph (see Doc. # 11).

40. The allegations of Paragraph 40 state conclusions of law, and rely upon documents which speak for themselves and, therefore, no response is required. To the extent that a further response is required, MOX Services has conducted extensive investigations related to WGES' REAs and has made two separate and reasonable offers in response to those REAs, both of which WGES has refused to accept. It is again denied that WGES is entitled to any recovery under a termination settlement proposal as it was not terminated for convenience. To the extent that any further response is required, the remainder of this Paragraph is denied. Furthermore, MOX Services incorporates by reference its Motion to Strike this Paragraph (see Doc. # 11).

## COUNT I – BREACH OF CONTRACT

41. MOX Services incorporates by reference Paragraphs 1 through 40 above as if the same are set forth more fully herein.

42. Paragraph 42 contains legal conclusions to which no response is required. To the extent that a response is required, this Paragraph is denied.

43. Paragraph 43 contains legal conclusions to which no response is required. To the extent that a response is required, this Paragraph is denied.

44. Paragraph 44 contains legal conclusions to which no response is required. To the extent that a response is required, this Paragraph is denied.

45. Paragraph 45 contains legal conclusions to which no response is required. It is admitted only that, on or about May 7, 2013, WGES made a demand. It is specifically denied that the demand was "due and just". To the extent that any further response is required, this Paragraph is denied.

46. Paragraph 46 contains legal conclusions to which no response is required. To the extent that a response is required, it is specifically denied that MOX Services has unreasonably

refused to pay some or all of the amount claimed as MOX Services conducted a reasonable investigation and has twice offered to settle WGES' REAs, both of which were refused by WGES. To the extent that any further response is required, this Paragraph is denied.

47.     Paragraph 47[1] contains legal conclusions to which no response is required. To the extent that a response is required, this Paragraph is denied as MOX Services has conducted a reasonable investigation of WGES' REAs and has twice offered to resolve those REAs, both of which were refused by WGES. It is further denied that WGES is entitled to recover the full amount of its demand. To the extent that any further response is required, the remainder of this Paragraph is denied.

WHEREFORE, the Defendant, Shaw AREVA MOX Services, LLC, respectfully requests that this Court dismiss Plaintiff's Complaint, with prejudice; award Defendant the costs of this suit; and grant any other further relief that this Court deems just.

<u>MOX Services denies each and every allegation, averment and Paragraph not specifically and expressly admitted immediately above.</u>

## **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**

Plaintiff's Complaint fails to state any claim upon which relief can be granted.

---

[1] Counsel for both parties have discussed that Paragraph 47 of the Complaint contains two typographical errors which reference "MOX" instead of "WGES". Counsel have agreed in writing that MOX Services will respond to Paragraph 47 of the Complaint as if it referred to "WGES" instead of "MOX" to avoid an amendment to the Complaint.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and/or reduced by the legal doctrines of accord and satisfaction; assumption of risk; contributory negligence; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; justification, statute of frauds; statute of limitations; and waiver.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were caused by its own acts, omissions, negligence and/or fault.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were caused by the acts, omissions, negligence and/or fault of third parties outside of the control of MOX Services, and otherwise were not the direct or proximate result of any alleged action or inaction of MOX Services.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and/or reduced based upon the parties' contracts, understandings or other agreements.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate damages and, therefore, is barred from recovering any alleged damages from MOX Services.

## RESERVATION OF RIGHTS

MOX Services expressly reserves the right to supplement these Affirmative Defenses as discovery, and this litigation in general, progress up to and including the time of trial.

## COUNTERCLAIM

### I. The Parties, Jurisdiction and Venue

1. The Defendant / Counterclaim Plaintiff, Shaw AREVA MOX Services, LLC ("MOX Services"), is a limited liability company with its principal place of business located in Aiken, South Carolina.

2. The Plaintiff / Counterclaim Defendant, Washington Government Environmental Services Company, LLC ("WGES"), upon information and belief, is a privately held limited liability company.

3. Upon information and belief, WGES is a wholly-owned subsidiary of URS Energy & Construction, Inc., which is an Ohio corporation with its principal place of business in Denver, Colorado.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 due to the parties' complete diversity of citizenship and an amount in controversy in excess of $75,000.00.

5. Venue is proper pursuant to the forum-selection clause of the agreement between the parties, and WGES has consented to jurisdiction in this forum.

6. MOX Services respectfully requests that its claims be heard by a jury.

### II. Factual Background

7. MOX Services is the prime contractor for the mixed oxide fuel facility being constructed at the Savannah River Site outside of Aiken, South Carolina (the "Project").

8. Starting in 2009, and extending into late 2010, MOX Services issued a series of Task Orders to WGES: Task Order No. 1 on or about September 25, 2009 ("TOR 001"); Task

Order No. 3 on or about March 4, 2010 ("TOR 003"); and Task Order No. 5 on or about October 22, 2012 ("TOR 005").

9. Collectively, TOR 001, TOR 003 and TOR 005, along with the other contract documents, represent the parties' "Agreement" related to the Project.

### III. Claims for Relief

### Counterclaim I: Breach of Contract

10. MOX Services incorporates by reference the above Paragraphs as if the same are set forth herein at length.

11. During WGES' course of performance on the Project, WGES materially breached multiple provisions of the parties' Agreement, including, but not limited to Section E, paragraphs 1.15, 1.16, 1.18, 1.25, 1.34 and the incorporated FAR provision 52.249.2, codified at C.F.R. § 52.249-2, and otherwise failed to fully and timely perform its obligations and duties under the Agreement.

12. Additionally, WGES breached its implied covenant of good faith and fair dealing.

13. Due to WGES' inability to timely and fully perform its contractual obligations, MOX Services de-scoped the remaining work under the Agreement on or about August 20, 2012.

14. After the de-scoping of the work, MOX Services was required to engage in the re-procurement process for the scope of work that was remaining under the WGES Agreement at a cost much greater than that amount remaining under the WGES Agreement.

15. In addition to the additional costs of completing the work through other vendors, MOX Services was required and will be required to expend labor and administrative expenses that would not have been required had WGES not breached its contract.

16. All conditions precedent to MOX Services' claims for relief have been performed and/or excused.

17. As a direct and proximate result of WGES' breaches of the Agreement, MOX Services has sustained and continues to sustain significant damages including, but not limited to, monetary damages totaling in excess of $11,000,000.00, plus interest and related costs.

WHEREFORE, MOX Services respectfully requests that this Court grant its Counterclaims in favor of MOX Services and against WGES; award MOX Services monetary damages in an amount in excess of $75,000.00, plus costs and interest; and grant any further relief that this Court deems appropriate.

## Counterclaim II: Costs and Attorneys' Fees

18. MOX Services incorporates by reference the above Paragraphs as if the same are set forth herein at length.

19. Pursuant to South Carolina Code § 27-1-15, MOX Services is entitled to recover attorney's fees, costs and interest.

WHEREFORE, MOX Services respectfully requests that this Court grant its Counterclaims in favor of MOX Services and against WGES; award MOX Services monetary damages in an amount in excess of $75,000.00, plus attorneys' fees, costs and interest; and grant any further relief that this Court deems appropriate.

NOW THEREFORE, the Defendant / Counterclaim Plaintiff, Shaw AREVA MOX Services, LLC, respectfully requests that this Court dismiss Plaintiff's Complaint, with prejudice; award Defendant the costs of this suit; grant Defendant's Counterclaim in full, together with costs, interest and other compensable damages; and grant any other further relief that this Court deems just.

Respectfully submitted,

          By: /s/ Kevin A. Hall
             Kevin A. Hall
             Federal Bar No. 5375
             *kevin.hall@wcsr.com*
             M. Todd Carroll
             Federal Bar No. 9742
             *todd.carroll@wcsr.com*
             WOMBLE CARLYLE SANDRIDGE & RICE LLP
             1727 Hampton Street
             Columbia, SC  29201
             803- 454-6504

             Ericson P. Kimbel
             PA ID No. 85074
             *ekimbel@saul.com*
             SAUL EWING LLP
             One PPG Place, 30th Floor
             Pittsburgh, PA  15222
             412-209-2533
             *Admitted Pro Hac Vice*

             *Attorneys for Defendant Shaw AREVA MOX Services, LLC*

August 21, 2014
Columbia, South Carolina

-17-